Slip Op. 14 - 131

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| INTERNATIONAL FRESH TRADE CORP.,<br><br>          Plaintiff,<br><br>               v.<br><br>UNITED STATES,<br><br>          Defendant. | **PUBLIC VERSION**<br><br>Before: Donald C. Pogue,<br>          Senior Judge<br><br>Court No. 14-00213 |

OPINION and ORDER

[preliminary injunction denied]

Dated: November 10, 2014

Robert T. Hume and Carol Wyzinski, Hume & Associates LLC, of Ojai, CA, for the Plaintiff.

Tara K. Hogan, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for the Defendant.  Also on the brief were Joyce R. Branda, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director.  Of counsel was Chi Choy, Attorney, Office of Assistant Chief Counsel, U.S. Customs and Border Protection, of New York, NY.

**Pogue, Senior Judge:** In this action, Plaintiff International Fresh Trade Corp. ("IFTC") moves to enjoin U.S. Customs and Border Protection ("Customs" or "CBP") from imposing a single transaction bond requirement on Plaintiff's entries of fresh garlic from the People's Republic of China ("PRC").

Pl.'s Appl. for a TRO & Mot. for a Prelim. Inj., ECF No. 7

("Pl.'s Br."), at 1.  Plaintiff's entries are subject to an

antidumping duty order (A-570-831). Id.  Customs' enhanced bond

requirement would equal Plaintiff's potential antidumping duty

liability as calculated at the PRC-wide rate ($4.71/kg) rather

than the expected $0.24/kg cash deposit rate otherwise

applicable to Plaintiff's combination of exporter (Jining

Yongjia Trade Co., Ltd. ("Yongjia")) and producer (Jinxiang

County Shanfu Frozen Co., Ltd. ("Shanfu")). Id. at 1-2;

Am. Compl., ECF No. 16, at ¶ 1.  As Plaintiff has not

established its entitlement to a preliminary injunction, its

motion is denied.

### BACKGROUND

In 1994, the U.S. Department of Commerce ("Commerce")

issued an antidumping duty order on fresh garlic from the PRC

(A-570-831). Fresh Garlic from the [PRC], 59 Fed. Reg. 59,209

(Dep't Commerce Nov. 16, 1994) (antidumping duty order).  This

order set the PRC-wide rate at 376.67 percent (which translates

to a cash deposit rate of $4.71/kg). Id. at 59,210; Ex. 3 to

Pl.'s Br. (Undated Port of San Francisco Information Notice),

ECF No. 7-1 ("Information Notice").[1]  This rate is still in use

---

[1] For further discussion of the calculation of the PRC-wide cash
deposit rate calculation see Fresh Garlic from the [PRC], Issues
& Decision Mem., A-570-831, ARP 06-07 (June 8, 2009) (adopted in
74 Fed. Reg. 29,174 (Dep't Commerce June 19, 2009) (final
(footnote continued)

today. Information Notice, ECF No. 7-1.  In 2006, Yongjia began

shipping fresh garlic from the PRC to the United States. See

Fresh Garlic from the [PRC], 73 Fed. Reg. 56,550, 56,552 (Dep't

Commerce Sept. 29, 2008) (final results and rescission, in part,

of twelfth new shipper reviews) ("Twelfth NSR").  Yongjia

requested a new shipper rate ("NSR") from Commerce, and,

following investigation, was granted a combination rate with its

producer, Shanfu,[2] of 18.88 percent (which translates to a cash

deposit rate of $0.24/kg) ("Yongjia/Shanfu NSR"). Id.; App. to

Mem. Supp. Def.'s Opp'n to [Pl.'s Appl.] for TRO & [Mot.] for

Prelim. Inj. ("Def.'s App.") (CBP Cash Deposit Instructions for

Fresh Garlic from China, A-570-831 (Oct. 15, 2008)), ECF No.

24-1, at A4.[3]  Yongjia did not export fresh garlic to the United

States again until 2014,[4] with Plaintiff as importer. Ex. 4 to

---

results and partial rescission of the 13th antidumping duty
administrative review and new shipper reviews)) cmt. 8 at 31-32.

[2] A combination rate is a rate that applies only to a specific
combination of producer and exporter. See 19 C.F.R. §
351.107(b)(1) (2014).

[3] See also Pl.'s Br., ECF No. 7, at 3, 4.

[4] For administrative reviews in which Yongjia timely certified it
had no shipments during the period of review, see Fresh Garlic
from the [PRC], 75 Fed. Reg. 34,976, 34,977 (Dep't Commerce June
21, 2010) (final results and partial rescission of the 14th
antidumping duty administrative review); Fresh Garlic from the
[PRC], 76 Fed. Reg. 37,321, 37,323 (Dep't Commerce June 27,
2011) (final results and final rescission, in part, of the 2008-
2009 antidumping duty administrative review); Fresh Garlic from
the [PRC], 77 Fed. Reg. 11,486, 11,489 (Dep't Commerce February
                                              (footnote continued)

Pl.'s Br. (Decl. of Hung Nam Huynh, Vice President of IFTC), ECF No. 7-1 ("Huynh Decl."), at ¶¶ 4-6.  Because of what appeared to be discrepant information in the imports' phytosanitary certificates, Customs requested further documentation to verify the identity of the producer and shipper of the entries. Def's App. (Decl. of Marc Dolor, Senior Import Specialist, Area Port of San Francisco, CBP), ECF No. 24-1 at A83 ("Dolor Decl."), at ¶¶ 6-16.  The documents indicated that the producer, Shanfu, had undergone changes, including restructuring, that potentially rendered it a different entity and ineligible for the Yongjia/Shanfu NSR. Id. at ¶¶ 18-21; Def's App. (Decl. of Richard J. Edert, International Trade Specialist, National Targeting and Analysis Group, Office of International Trade, CBP), ECF No. 24-1 at A72 ("Edert Decl."), at ¶¶ 8-9.  Because of this uncertainty, Customs has denied entry until Plaintiff posts additional bonding to make its cash deposit rate commensurate with its potential antidumping duty liability (the $4.71/kg PRC-wide rate). Dolor Decl., ECF No 24-1 at A83, at

---

27, 2012) (partial final results and partial final rescission of the 2009-2010 administrative review); Fresh Garlic from the [PRC], 78 Fed. Reg. 36,168, 36,170 (Dep't Commerce June 17, 2013) (final results of antidumping administrative review; 2010-2011); Fresh Garlic from the [PRC], 79 Fed. Reg. 36,721, 36,724 (Dep't Commerce June 30, 2014) (final results and partial rescission of the 18th antidumping duty administrative review; 2011-2012).

¶ 22; Edert Decl., ECF No. 24-1 at A72, at ¶ 10; Information

Notice, ECF No. 7-1 at Ex. 3 (providing Plaintiff with notice

that "[t]o ensure entries are filed correctly and to protect

[the] revenue [of the United States]," Customs may require that

the importer provide an "additional single transaction bond [for

each entry] to cover antidumping duties" at the PRC-wide rate of

$4.71/kg).  Plaintiff challenges this determination as arbitrary

and capricious, asserting jurisdiction under 28 U.S.C. § 1581(i)

(2012).[5] <u>See</u> Pl.'s Br., ECF No. 7, at 1; Am. Compl., ECF No. 16.

Plaintiff sought a temporary restraining order ("TRO")

and preliminary injunction to prevent Customs from imposing the

heightened bonding requirement. Pl.'s Br., ECF No. 7, at 1.  The

court held an evidentiary hearing on October 1, 2014, <u>see</u>

Hr'g, ECF No. 29, and subsequently denied Plaintiff's request

for a TRO, Conf. Tr. of Hr'g, ECF No. 31, at 64:15-16.

## DISCUSSION

"A preliminary injunction is an extraordinary remedy

never awarded as of right." <u>Winter v. Natural Res. Def. Council,</u>

<u>Inc.</u>, 555 U.S. 7, 24 (2008) (citation omitted).  To obtain a

preliminary injunction, the Plaintiff must establish that (1) it

is likely to suffer irreparable harm without a preliminary

injunction, (2) it is likely to succeed on the merits, (3) the

---

[5] All further citations to the U.S. Code are to the 2012 edition.

balance of the equities favors the Plaintiff, and (4) the injunction is in the public interest. Id. at 20; Zenith Radio Corp. v. United States, 710 F.2d 806, 809 (Fed. Cir. 1983).  No one factor is dispositive, FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993), but likelihood of success and irreparable harm are "[c]entral to the [Plaintiff's] burden." Sofamor Danek Grp., Inc. v. DePuy-Motech, Inc., 74 F.3d 1216, 1219 (Fed. Cir. 1996).  The court evaluates a request for a preliminary injunction on a "sliding scale" — "the more the balance of irreparable harm inclines in the plaintiff's favor, the smaller the likelihood of prevailing on the merits [it] need show" to get the injunction. Qingdao Taifa Grp. Co. v. United States, 581 F.3d 1375, 1378-79 (Fed. Cir. 2009) (quotation marks and citation omitted).

I.   Plaintiff Has Not Established a Clear Threat of Irreparable Harm.

        "Plaintiff bears an extremely heavy burden" to establish irreparable harm. Shandong Huarong Gen. Grp. Corp. v. United States, 24 CIT 1279, 1282, 122 F. Supp. 2d 1367, 1369 (2000) (citation omitted).  Harm is only irreparable when there is no adequate remedy at law, see Morales v. Trans World Airlines, Inc., 504 U.S. 374, 381 (1992), when "no damages payment, however great," can address it, Celsis In Vitro, Inc. v. CellzDirect, Inc., 664 F.3d 922, 930 (Fed. Cir. 2012)

(citations omitted).  Further, the threat of irreparable harm
must be immediate and viable — "[a] preliminary injunction will
not issue simply to prevent a mere possibility of injury, even
where prospective injury is great." Zenith Radio, 710 F.2d at
809 (quotation marks and citation omitted).[6]  Plaintiff has not
met this burden.

Plaintiff alleges inability to pay the required cash
deposit,[7] and, in the absence of a preliminary injunction,
continued denied entry, mounting demurrage and storage charges,[8]
loss of reputation amongst customers (including threatened

---

[6] See also Winter, 555 U.S. at 22 (holding that movant must
"demonstrate that irreparable injury is *likely* in the absence of
an injunction") (emphasis in original) (citations omitted)).

[7] Plaintiff has not offered evidence that it tried to obtain a
single transaction bond in lieu of paying the full cash deposit.
Normally, an importer can obtain a single transaction bond from
a surety for a small percentage of the bond value. See Mem.
Supp. Def.'s Opp'n to [Pls.' Appl.] for TRO & [Mot.] for Prelim.
Inj., ECF Nos. 19 (pub. version) & 24 (conf. version) ("Def.'s
Br."), at 16; [Def.'s] Resp. to Ct.'s Req., Sept. 30, 2014, ECF
No. 25, at ¶ 1.  However, it seems that given the level of risk
in this industry at this time, bonds are only available for full
collateral. See Kwo Lee, Inc. v. United States, Slip Op. 14-121,
2014 WL 5369391, at *3 (Oct. 16, 2014).  Accordingly, IFTC's
claimed inability to pay the cash deposit rate suggests an equal
inability to obtain the requisite bonding.

[8] Demurrage is, *inter alia*, "[a] charge due for the late return
of ocean containers or other equipment." Black's Law Dictionary
526 (10th ed. 2014).  Plaintiff lists the other storage charges
as "per diem charges, monitoring of the refrigeration units,
[and] the expense of fuel or plug in charges." Add. Decl. of
Hung Nam Huynh, Vice President of IFTC, ECF Nos. 10 & 10-1
("Add. Huynh Decl."), at ¶ 12.

litigation for failure to deliver), financial inability to re-export, and loss of the imports themselves (as the garlic is spoiling pending release). Huynh Decl., ECF No. 7-1 at Ex. 4, at ¶¶ 10-13; Add. Huynh Decl., ECF Nos. 10 & 10-1, at ¶¶ 6-9, 11-13.   All this, Plaintiff claims, threatens to "virtually put both the [Plaintiff] and [Yongjia] out of business." Add. Huynh Decl., ECF Nos. 10 & 10-1, at ¶ 9.   While these harms are potentially irreparable,[9] Plaintiff has failed to prove that they are immediate and viable: Plaintiff's evidence on irreparable harm consists solely of two affidavits from its vice president. Huynh Decl., ECF No. 7-1 at Ex. 4; Add. Huynh Decl., ECF Nos. 10 & 10-1.   Without more, affidavits from interested parties may be

---

[9] Financial loss alone is not irreparable, Sampson v. Murray, 415 U.S. 61, 90 (1974), but "[p]rice erosion, loss of goodwill, damage to reputation, and loss of business opportunities" are irreparable. Celsis In Vitro, 664 F.3d at 930 (citations omitted); CPC Int'l, Inc. v. United States, 19 CIT 978, 979, 896 F. Supp. 1240, 1243 (1995) (Irreparable harm occurs where "compliance with a ruling of Customs . . . would cause the importer to incur costs, expenditures, business disruption or other financial losses, for which the importer has no legal redress to recover in court, even if the importer ultimately prevails on the merits in contesting the ruling.").   Bankruptcy is an irreparable harm because, in addition to the obvious economic injury, loss of business renders a final judgment useless, depriving the movant of effective and meaningful judicial review. Doran v. Salem Inn, Inc., 422 U.S. 922, 932 (1975); Queen's Flowers de Colombia v. United States, 20 CIT 1122, 1127, 947 F. Supp. 503, 507 (1996); McAfee v. United States, 3 CIT 20, 24, 531 F. Supp. 177, 179 (1982) ("It is difficult for this court to envision any irreparable damage to a plaintiff and his business more deserving of equitable relief than the [very] loss of the business itself.").

considered "weak evidence, unlikely to justify a preliminary injunction." <u>Shree Rama Enters. v. United States</u>, 21 CIT 1165, 1167, 983 F. Supp. 192, 195 (1997).[10]  Plaintiff has produced neither independent evidence nor witnesses for cross examination to support its affidavits.  Plaintiff also has not provided financial statements to prove lack of necessary capital reserves, and Plaintiff has not shown that it sought and was denied financing to meet its enhanced bonding obligations. <u>See</u> <u>Shandong Huarong</u>, 24 CIT at 1290-91, 122 F. Supp. 2d at 147 (citing <u>Chilean Nitrate Corp. v. United States</u>, 11 CIT 538, 541 (1987) (not reported in the Federal Supplement).[11]  Further, Plaintiff has failed to adequately explain why it did not use the available and appropriate administrative remedy – a Department of Commerce changed circumstances review, <u>see</u> *infra* Section II — to address the matter raised here.  Accordingly,

---

[10] <u>See also</u> <u>Atari Games Corp. v. Nintendo of Am., Inc.</u>, 897 F.2d 1572, 1575 (Fed. Cir. 1990) ("As general rule, a preliminary injunction should not issue on the basis of affidavits alone." (citations omitted)).

[11] <u>Cf.</u> <u>Companhia Brasileira Carbureto de Calcio v. United States</u>, 18 CIT 215, 217 (1994) (not reported in the Federal Supplement) (finding insufficient showing of irreparable harm where "[n]o hard evidence was submitted to the court indicating what specific effect loss of [sales] would have upon [movant]").

Plaintiff has not established a clear threat of irreparable

harm.[12]

## II.  Plaintiff Has Not Established a Sufficient Likelihood of Success on the Merits.

Even assuming, *arguendo*, that Plaintiff had produced

the requisite evidence to make a strong showing of irreparable

harm, it would still need to establish some chance of success on

the merits, FMC Corp., 3 F.3d at 427, by raising, at the very

least, questions that are "serious, substantial, difficult and

doubtful." Timken Co. v. United States, 6 CIT 76, 80, 569 F.

Supp. 65, 70 (1983) (internal quotation marks and citations

omitted).  Plaintiff has not done so here.

On the merits, Plaintiff challenges Customs'

determination that it must provide enhanced bonding. Am. Compl.,

ECF No. 16, at ¶ 1.  Plaintiff again faces a high burden.

Customs has broad authority to protect the revenue of the United

States, see 19 U.S.C. § 1623, and has promulgated extensive

bonding regulations, following notice and comment rule making,

pursuant to that authority. See Customs Bond Structure;

---

[12] See Shree Rama, 21 CIT at 1167-68, 983 F. Supp. at 195 ("If
the court were to grant plaintiffs' motion on so little
documentary evidence, it would essentially be holding that any
substantial increase in deposit rates before a final court
decision constitutes irreparable harm *per se.* Future petitioners
would be able to forestall the application of new deposit rates
in many, if not most, antidumping or countervailing duty
determinations contested in court.").

*Revision*, 49 Fed. Reg. 41,152 (Oct. 19, 1984); 19 C.F.R. Ch. I,
Pt. 113.  This includes 19 C.F.R. § 113.13(d) (2014), which
allows for enhanced bonding determinations.  The court will only
set aside Customs' enhanced bonding determination if the
agency's decision is arbitrary and capricious. 5 U.S.C. §
706(2)(A).[13]  Arbitrary and capricious is a narrow standard of
review: "The court is not empowered to substitute its judgment
for that of the agency," *Citizens to Pres. Overton Park, Inc. v.*
*Volpe*, 401 U.S. 402, 416 (1971), but rather ensures that Customs
has "articulate[d] a rational connection between the facts found
and the choice made," *Bowman Transp., Inc. v. Ark.-Best Freight*
*Sys., Inc.*, 419 U.S. 281, 285 (1974) (internal quotation marks
and citation omitted).

        Plaintiff argues that Customs' enhanced bonding
determination is arbitrary and capricious because it applies the
PRC-wide rate, rather than the Yongjia/Shanfu NSR, when Customs
has "provided no evidence and made no claims that Yongjia and/or
its supplier were not independent of Chinese government control
or were subject to the [adverse facts available] rate." Pl.'s
Br., ECF No. 7, at 6.  This argument misapprehends the facts
found and choices made, obfuscating an otherwise rational

---

[13] The court reviews actions brought under 28 U.S.C. § 1581(i)
(such as here) as provided in the Administrative Procedures Act,
5 U.S.C. § 706. *See* 28 U.S.C. § 2640(e).

connection between the two.  Under 19 C.F.R. § 113.13(d),

Customs can require additional security equal to an importer's

potential antidumping duty liability. Nat'l Fisheries Inst.,

Inc. v. U.S. Bureau of Customs & Border Prot., 33 CIT 1137,

1160, 637 F. Supp. 2d 1270, 1291 (2009).  While Yongjia and

Shanfu do have an NSR, Twelfth NSR, 73 Fed. Reg. at 56,552, it

is a combination rate and only applies to the specified

producer/exporter together. See 19 C.F.R. § 351.107(b)(1).

Otherwise, the PRC-wide rate applies. See Twelfth NSR, 73 Fed.

Reg. at 56,552.  Customs, considering evidence that Shanfu

underwent changes that, for antidumping duty purposes,

potentially rendered the company a different entity (Shanfu

LLC),[14] determined that it could not verify Shanfu's identity.

---

[14] These changes include a restructuring as the business had a
[[


                                          ]], and a change in
name (however minor), as well as changes in [[


                      ]]. Ex. I to Dolor Decl. (Letter
from Robert T. Hume, Counsel to Yongjia and Plaintiff, to Marc
Dolor, Senior Import Specialist, Port of San Francisco, CBP
(August 27, 2014)), ECF No. 24-1 at A191 ("Hume Letter"), at
A194-96 (providing Shanfu's company history); Supp. App to
Def.'s Br., ECF Nos. 26 (conf. version) & 32 (pub. version)
(providing the exhibits submitted with the Hume Letter by
Yongjia to Customs, including business documents (with
translations) evidencing the changes to Shanfu); see also Edert
Decl., ECF No. 24-1 at A72, at ¶ 8; Ex. B to Edert Decl., ECF
No. 24-1 at A79 (annotated screen captures of PRC government
website indicating changes to Shanfu); Dolor Decl., ECF No. 24-1
                                          (footnote continued)

Dolor Decl., ECF No. 24-1 at A83, ¶¶ 16-18.  Accordingly, it

applied the Yongjia/unknown producer rate (the PRC-wide rate)

and required bonding equal to Plaintiff's potential antidumping

duty liability. Id. at ¶ 21-22; Edert Decl., ECF No 24-1 at A73,

¶¶ 6-10; Information Notice, ECF No. 7-1 at Ex. 3.  It made no

determination, nor did it need to, regarding Chinese government

control or the applicability of the PRC-wide rate to Shanfu.

        Plaintiff also argues that it provided Customs with

evidence that the present Shanfu LLC was effectively the same

entity as the NSR Shanfu and, therefore, is its successor-in-

interest. [Pl.'s] Mem. Concerning Changes to the Producer of

Pl.'s Fresh Garlic, ECF No. 27 ("Pl.'s Mem. re Changes"),

at 3-6.  Regardless of the strength of this evidence, this is

not Customs' decision to make.  Customs cannot make substantive

determinations under the antidumping duty laws.  Its role is

purely ministerial. Reorganization Plan No. 3 of 1979, 44 Fed.

Reg. 69,273, 69,274-75 (Dec. 3, 1979) (announcing transfer from

Customs to Commerce of, *inter alia*, all substantive functions

under 19 U.S.C. §§ 1671 *et seq.*), effective under Exec. Order

No. 12,188 of January 2, 1980, 45 Fed. Reg. 989, 993 (1980).

---

at A83, at ¶¶ 16-18, 23; Ex. F to Dolor Decl. (Email from Nick
Hong to Marc Dolor), ECF No. 24-1 at A122 (with attached
documents, providing additional evidence of changes); Decl. of
Wang Hua (Shanfu's general manager), ECF No. 30, at ¶¶ 2-6
(discussing changes to Shanfu).

Rather, Commerce makes such determinations. 19 U.S.C § 1675(b)

(providing for changed circumstances review).  Plaintiff further

argues that the changes to Shanfu were so insignificant as not

to require a substantive determination. Pl.'s Mem. re Changes,

ECF No. 27, at 2-3.  However, Commerce routinely uses changed

circumstances review to make successor-in-interest

determinations address changes comparable to those evidenced for

Shanfu — including renaming and restructuring.[15]

---

[15] For examples within this antidumping duty order (A-570-831),
see Fresh Garlic from the [PRC], 79 Fed. Reg. 63,381 (Dep't
Commerce) (Oct. 23, 2014) (initiation of changed circumstances
review ("CCR")) (initiation of CCR to make successor-in-interest
determination after name change of garlic producer/exporter);
Fresh Garlic from the [PRC], 69 Fed. Reg. 58,892 (Dep't Commerce
Oct. 1, 2004) (notice of final results of antidumping duty CCR)
(granting successor-in-interest status following a CCR for a
name change).  For further examples, see Certain Lined Paper
Products from India, 79 Fed. Reg. 35,726 (Dep't Commerce June
24, 2014) (final results of CCR) (granting successor-in-interest
status after CCR for name change); Certain Lined Paper Products
from India, 79 Fed. Reg. 40,709 (Dep't Commerce July 14, 2014)
(initiation and preliminary results of antidumping duty CCR)
(preliminary grant of successor-in-interest status after CCR for
a merger); Certain Frozen Warmwater Shrimp from Thailand, 74
Fed. Reg. 52,452 (Dep't Commerce Oct. 13, 2009) (final results
of antidumping duty CCR and notice of revocation in part)
(granting successor-in-interest status after CCR for
acquisition); Brake Rotors from the [PRC], 70 Fed. Reg. 69,941
(Dep't Commerce Nov. 18, 2005) (final results of CCR) (granting
successor-in-interest status following CCR); Polychloroprene
Rubber from Japan, 69 Fed. Reg. 67,890 (Dep't Commerce Nov. 22,
2004) (notice of final results of antidumping duty CCR) (denying
successor-in-interest status following CCR); Polychloroprene
Rubber from Japan, 67 Fed. Reg. 58 (Dep't Commerce Jan. 2, 2002)
(notice of final results of CCR) (granting successor-in-interest
status following CCR for restructuring and renaming); Industrial
Phosphoric Acid from Israel, 59 Fed. Reg. 6944 (Dep't Commerce
                                        (footnote continued)

Plaintiff, therefore, has failed to raise a serious or substantial question that suggests Customs' determination was arbitrary and capricious, and has therefore failed to establish its likelihood of success on the merits.

III.  The Balance of the Equities Does Not Favor the Plaintiff.

Before granting a preliminary injunction, the court "must balance the competing claims of injury and must consider the effect" that granting or denying relief will have on each party. Winter, 555 U.S. at 24 (internal quotation marks and citation omitted).  Here, Plaintiff alleges that denying a preliminary injunction will cause it substantial economic injury, including possible bankruptcy, but fails to provide sufficient evidence to establish a viable threat of that irreparable harm.[16]  Customs, meanwhile, alleges that granting a preliminary injunction will threaten substantial economic injury in the form of lost revenue to the United States. See Def.'s Br., ECF No. 19, at 31; 19 U.S.C. § 1623.  As Plaintiff has not established irreparable harm and Customs claims an at least comparable economic injury, the balance of the equities cannot be said to favor either (and therefore does not favor the

_____

Feb. 14, 1994) (final results of CCR) (granting successor-in-interest status following CCR).

[16] See discussion supra Section I.

Plaintiff).[17]

IV.   Granting the Plaintiff a Preliminary Injunction Does Not
      Serve the Public Interest.

          The court "should pay particular regard for the public

consequences" when "employing the extraordinary remedy of

injunction." Winter, 555 U.S. at 24 (internal quotation marks

and citations omitted).  Here, the public has a strong interest

in protecting the revenue of the United States and in assuring

compliance with the trade laws.  See 19 U.S.C. § 1623.  Enhanced

bonding pending litigation serves both these interests.

Additional security covers potential liabilities and protects

against default, ensuring the correct antidumping duty is paid.[18]

Cf. Shandong Huarong, 24 CIT at 1286, 122 F. Supp. 2d at 1372

("The public has an interest in ensuring the fair application of

_____

[17] See Olympia Indus., Inc. v. United States, 30 CIT 12, 19
(2006) (not reported in the Federal Supplement) (finding that
"because both parties face hardship should their arguments with
respect to the issuance of an injunction not succeed, the
balance of hardships does not aid plaintiff").

[18] "[T]he United States uses a 'retrospective' assessment system
under which final liability for antidumping and countervailing
duties is determined after merchandise is imported." 19 C.F.R. §
351.212.  At entry, importers make a cash deposit of the
estimated antidumping duties, id. at 351.211(b)(2), but if, as
here, the antidumping duty rate is challenged by an interested
party, the final antidumping duty rate (and thus amount owed)
will be assessed pursuant to an administrative review, id. at
§§ 351.213, 351.211(b)(1), or, if appealed to this Court,
assessed according to the final decision in the action,
19 U.S.C. § 1516a(e)(2).

the antidumping laws while simultaneously guaranteeing foreign
exporters will not default in the satisfaction of their import
obligations.").

        Plaintiff argues that a preliminary injunction serves
the public interest because it ensures the "proper and equitable
enforcement of the trade laws, ensuring the correct antidumping
duties are collected." Pl.'s Br., ECF No. 7, at 10 (citation
omitted).  While the public interest is served by the accurate
and effective, uniform and fair enforcement of trade laws, Union
Steel v. United States, 33 CIT 614, 622, 617 F. Supp. 2d 1373,
1381 (2009); Ceramica Regiomontana, S.A. v. United States, 7 CIT
390, 397, 590 F. Supp. 1260, 1265 (1984), use of available
administrative remedies is an essential premise of this
enforcement, see 28 U.S.C. § 2637 (requiring, with limited
exception, exhaustion of administrative remedies before an
action may be commenced before this Court).  Moreover, the court
"endeavor[s] to ensure these ends whether an injunction is in
place or not." Olympia Indus., 30 CIT at 18.  Accordingly,
granting Plaintiff's preliminary injunction does not serve the
public interest.

                            **CONCLUSION**

        Plaintiff has not demonstrated entitlement to a
preliminary injunction.  Plaintiff has not established
irreparable harm or likelihood of success on the merits, and the

balance of equities and public interest do not favor the

Plaintiff.  Accordingly, Plaintiff's motion is DENIED.


                              /s/ Donald C. Pogue
                              Donald C. Pogue, Senior Judge


Dated: November 10, 2014
       New York, NY